UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


PAUL AND JANE BROUSSARD                    CIVIL ACTION


VERSUS                                     NO: 06-8084


STATE FARM FIRE AND CASUALTY               SECTION: "R"(2)
COMPANY


### ORDER AND REASONS

Before the Court is defendant State Farm Fire and Casualty
Company's motion for declaratory judgment on several pending
issues in this matter.  Because this is not a declaratory
judgment proceeding brought by the insurer pursuant to Rule 57 of
the Federal Rules of Civil Procedure and the Declaratory Judgment
Act, 28 U.S.C. § 2201, the Court will treat defendant's motion as
a Rule 12(c) motion for judgment on the pleadings to the extent
that it challenges plaintiffs' claims based on the pleadings and
a Rule 56 motion for summary judgment to the extent that it
relies on matters outside the pleadings.  For the following
reasons, the Court GRANTS in part and DENIES in part defendant's
motion.

**I.    BACKGROUND**

Plaintiffs Paul and Jane Broussard are Louisiana homeowners whose property was rendered a total loss as a result of Hurricane Katrina.  Plaintiffs' home, which was located in Plaquemines Parish, was insured under a homeowner's policy and a flood policy, both issued by defendant State Farm.  Plaintiffs assert that the amount that they have received thus far from State Farm under both their homeowner's and flood policies has not fully compensated them for their covered losses.  The homeowner's policy contained coverage limits of $159,600 on the dwelling, $87,780 on contents, and $15,960 on the dwelling extension.  The flood policy contained coverage limits of $131,300 on the dwelling and $50,300 on its contents.  To date, State Farm has paid plaintiffs $40,422.44 for damage to the dwelling and dwelling extension[1] and $25,296.81 for contents under their homeowner's policy, as well as $131,300 for dwelling and $52,800 for contents under their flood policy.  In sum, plaintiffs have received $249,819.25 under both policies.

Plaintiffs contend that they have been underpaid on their policies because their dwelling was determined to be a total loss

---

[1] Plaintiffs assert that only $20,020.88 of that amount represents payment for damage to their dwelling structure, with the remainder directed toward damage to the dwelling extension and removal of a tree.

2

in the aftermath of Hurricane Katrina.  Plaintiffs complain that
the perils of wind *and* water caused the loss of their property,
which they assert had a pre-storm value of more than $400,000.
Accordingly, plaintiffs contend that the approximate total of
$151,000 that they have been paid under their flood and
homeowner's policies for damage to their dwelling falls well
short of their actual covered loss.  In addition to their breach
of insurance contract claim on their homeowner's policy,
plaintiffs assert causes of action under La. Rev. Stat. §§ 22:658
and 22:1220 for State Farm's alleged arbitrary or capricious
failure to timely pay their claim after it received satisfactory
proof of loss.  They seek attorney's fees under Section 22:658,
as well as general damages under Section 22:1220.  Finally,
plaintiffs assert a claim under La. Rev. Stat. § 22:695,
Louisiana's Valued Policy Law.

State Farm now moves for a declaration on several issues
presented in this matter.  Specifically, it argues: (1) that
plaintiffs bear the burden of proving coverage under their
homeowner's policy; (2) that plaintiffs are estopped from
recovering for a total loss under their homeowner's policy after
recovering the full limits under their flood policy; (3) that
plaintiffs are entitled to recover, at most, the difference
between the limits under their homeowner's policy and the amount

that they have already been paid under their flood policy; (4) that plaintiffs' bad faith claims under Sections 22:658 and 22:1220 fail as a matter of law; and (5) that plaintiffs' claims under Sections 22:658 and 22:1220 can only be brought under the pre-Katrina versions of those statutes. The Court rules on these issues as follows.

## II.   LEGAL STANDARDS

### A.   Motion for Judgment on the Pleadings

A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a Rule 12(b)(6) motion to dismiss. *See Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004) (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 n.8 (5th Cir. 2002) ("The standard for dismissal under Rule 12(c) is the same as that for dismissal for failure to state a claim under Rule 12(b)(6).").  To withstand a Rule 12(b)(6) motion, plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007). "Factual allegations must be enough to raise a right to relief about the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1965 (internal citations omitted).

4

**B.   Motion for Summary Judgment**

Summary judgment is appropriate when there are no genuine issues as to any material facts, and the moving party is entitled to judgment as a matter of law.  *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  A court must be satisfied that no reasonable trier of fact could find for the nonmoving party or, in other words, "that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in her favor." *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  The moving party bears the burden of establishing that there are no genuine issues of material fact.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325; *see also Lavespere*, 910 F.2d at 178.  The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See Celotex*, 477 U.S. at 324.  The nonmovant may not rest upon the pleadings, but must identify specific facts that

5

establish a genuine issue exists for trial.  *See id.* at 325;

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1996).


**III. DISCUSSION**

    **A.**    **Burden of Proof Under Plaintiff's Homeowner's Policy**

        Another court in the Eastern District of Louisiana recently

addressed the requisite burdens of proof as to coverage under a

homeowner's insurance policy in Louisiana.  *See Ferguson v. State*

*Farm Ins. Co.*, 2007 WL 1378507 (E.D. La. May 9, 2007) (Berrigan,

J.).  In *Ferguson*, the court found:

> [T]here are two distinct burdens of proof in this
> case: Coverage A for the dwelling and other
> structures, and Coverage B for personal property.
>
> Coverage A, for the dwelling and other structures, is
> an "open peril" policy, providing coverage for
> "accidental direct physical loss," subject to the
> policy's specific exclusions, limitations and
> conditions.  Under an open peril policy, if the
> insureds meet their threshold burden of proving an
> accidental direct physical loss to the insured
> property, then the burden shifts to the insurer to
> prove the applicability of any asserted exclusion by
> a preponderance of the evidence.  Under Louisiana
> law, the insurance company has the burden to prove
> that a loss comes within a policy exclusion. . . .
> Should the defendant meet their threshold burden of
> proving the exclusion, the burden will again shift
> back to the plaintiffs to prove they fall under an
> exception to the exclusion, by a preponderance of the
> evidence.
>
> Coverage B, for the contents or personal property, is
> a "named peril" policy, providing coverage for
> "accidental direct physical loss," on a named or

6

> specific peril basis.  Under a named peril policy,
> the plaintiffs are required to prove by a
> preponderance of the evidence that their personal
> property was lost or damaged due to a specified
> covered risk named in the policy.  Should the
> plaintiffs meet this threshold requirement, the
> burden then shifts to the insurer to prove the
> applicability of any asserted exclusion by a
> preponderance of the evidence . . . .

*Ferguson*, 2007 WL 1378507, at *1-2 (internal citations omitted).

State Farm does not dispute these basic principles of Louisiana insurance law, which the Court adopts in full here. Rather, State Farm contends that, apart from the issue of whether plaintiffs' losses are covered losses under the terms of their homeowner's coverages, plaintiffs must also prove the amount of their covered damages.  Plaintiffs do not contest this assertion. The Court finds that, in order to recover for a breach of an insurance contract, plaintiffs are required to prove the amount of their claim for covered damages under their homeowner's policy by a preponderance of the evidence.  *See* COUCH ON INSURANCE § 175:92 (3d ed. 2006) ("In accord with general principles governing the law of damages, there can be no recovery for items where their existence and value are not proved."); *see also Burrell v. Seguros America Banamex, S.A.*, 316 So. 2d 177, 179 (La. App. 4th Cir. 1975) ("Under the circumstances we conclude plaintiffs' burden of proving the extent of damage from the fire required some showing beyond the mere presentation of a disputed

7

estimate."); *Grand Pelican Furniture Co. v. Cambridge Mut. Fire Ins. Co.*, 263 So. 2d 91, 92-93 (La. App. 1st Cir. 1972) (finding that "[t]here is no doubt of the damage inflicted upon plaintiff's upholstered furniture by the smoke, but the matter of resulting loss is highly questionable" and then concluding that plaintiff had not carried its burden of proving amount of loss). Moreover, in a situation, such as here, where a covered and a noncovered peril may have contributed to plaintiffs' loss, plaintiffs are required to prove the amount of segregable damage caused by the covered peril. *See Wellmeyer v. Allstate Ins. Co.*, 2007 WL 1235042, at *2 (E.D. La. Apr. 26, 2007) ("nothing bars the Wellmyers from collecting under their homeowner's policy for wind damage and from collecting under their flood policy if they can segregate and prove the two types of damages"); *see also Fiess v. State Farm Lloyds*, 392 F.3d 802, 807 (5th Cir. 2004) (applying Texas law to find that "[b]ecause the insured may only recover for damage caused by covered perils, the insured bears the burden of presenting evidence that will allow the trier of fact to segregate covered losses from non-covered losses"); COUCH ON INSURANCE § 175:9 (3d ed. 2006) ("It is an insured's burden to produce evidence that would afford a reasonable basis for estimating the amount of damage or the proportionate part of damage caused by the covered peril and that by the excluded

8

peril.").

**B.   Application of Estoppel Principles to Plaintiffs' Wind Claim**

State Farm contends that plaintiffs should be estopped, either under the principles of equitable or judicial estoppel, from claiming that they suffered a total loss due to wind damage after recovering the full limits under their flood policy.  As an initial matter, State Farm mischaracterizes plaintiffs' claims. Plaintiffs do not assert that they suffered a total loss caused by wind.  Rather, they argue that their home suffered wind damage apart from and in addition to flood damage, and request compensation only for that wind damage.  That they seek the full limits of their homeowner's policy does not necessarily equate to a claim based on a total loss, particularly since plaintiffs present evidence that their property was worth more than its insured value.  This Court has already ruled in a similar case that no policy provision or legal principle prevents plaintiffs from recovering for previously uncompensated, covered damage, without reference to the amount received under their flood policy, so long as the combined recovery does not exceed the value of their property.  *See Weiss v. Allstate Ins. Co.*, 2007 WL 891869, at *3 (E.D. La. Mar. 21, 2007).

Moreover, State Farm's estoppel argument (whether equitable

or judicial in nature) fails because the mere receipt of payments under plaintiffs' flood policy does not, without more, amount to a representation that plaintiffs' damage was caused exclusively by water such that their recovery must be limited accordingly. *See id.* at *2. Here, State Farm has not produced a signed proof of loss, any other sworn document, or evidence of any statement by plaintiffs in which they characterize their losses as exclusively a result of flooding. In fact, plaintiff Paul Broussard avers that "we did not submit any documents or written proof of loss to State Farm" on the flood claim. (R. Doc. 21, Affidavit of Paul Broussard). Plaintiffs also deny ever stating that their home "was completely demolished by flooding or a total loss from flooding." (*Id.*). Paul Broussard avers that "it was obvious from my first inspection sometime in late September or early October that our house had wind-related damages." (*Id.*). Moreover, Broussard states that the State Farm adjuster who inspected plaintiffs' property after Katrina determined that there had been wind damage and submitted a claim for that damage under their homeowner's policy. (*Id.*). State Farm ultimately paid plaintiffs for some wind damage to their dwelling, dwelling extension, and contents. Given these facts, plaintiffs' conduct is not so unambiguous as to amount to a representation that their home was destroyed by flooding. Thus, on this record, State Farm

10

has failed to carry its burden to obtain summary judgment on its estoppel claim.  *See Weiss*, 2007 WL 891869, at *2 (rejecting insurer's estoppel argument based on absence of evidence of any representation by plaintiffs that their damages were caused by flooding).

### C.   Whether Plaintiffs' Recovery is Limited to the Value of Their Homeowner's Policy

State Farm next argues that plaintiffs' recovery, if any, should be limited to $11,820.75, which it contends represents the difference between the pre-storm value of their dwelling, contents, and dwelling extension and the amounts that they already have received under their homeowner's and flood policies. State Farm relies on the coverage limits in plaintiffs' homeowner's policy to determine the pre-storm value of their property.

It is well established that insurance contracts are contracts of indemnity.  *See, e.g., Berkshire Mut. Ins. Co. v. Moffett*, 378 F.2d 1007, 1011 (5th Cir. 1967); *Wright v. Assurance Co. of America*, 728 So. 2d 974, 975 (La. App. 2d Cir. 1999).  It is also axiomatic that an insured cannot recover for the same loss twice under a contract for property insurance.  *See, e.g., Cole v. Celotex Corp.*, 599 So. 2d 1058, 1080 (La. 1992) ("As a general rule, the claimant may recover under all available

11

coverages provided that there is no double recovery."); *see also*
*Wellmeyer*, 2007 WL 1235042, at *3 ("an insured cannot recover
twice for the same loss").  Plaintiffs in this case are not
claiming that wind caused the total loss of their property, as
was the situation in *Weiss*.  (There, the Court gave a jury
instruction limiting plaintiffs' recovery to the maximum
permitted under their homeowner's policy.)  Rather, plaintiffs
claim that they had segregable wind and flood damages.  Thus,
they seek a recovery of previously uncompensated, covered damage,
and they argue that the combined amount of the already
compensated wind and flood damages and the uncompensated wind
damages does not exceed the total value of their property.  *See*
*Weiss*, 2007 WL 891869, at *3.  They submitted evidence that the
estimated replacement cost of their property is $432,951.75.  (R.
Doc. 21, Ex. 1, Gilbert Report; Ex. 7, Residential Substantial
Damage Estimate).  They also submitted evidence that they
suffered $232,062.14 in wind damage to their dwelling, for which
they have only been paid about $20,000 under their homeowner's
policy.  (*Id*.).  They further provided State Farm with
documentation showing at least $137,000 in damages to their
contents, a figure which approximates the amount of combined
coverage they had for wind and flood damage to their contents.
(R. Doc. 21, Ex. 8, Contents List).

12

The Court is therefore not presented with undisputed evidence that conclusively establishes the value of plaintiffs' home and contents.  The well-established propositions that insurance contracts are contracts of indemnity and that an insured cannot recover an amount greater than her loss support the result State Farm seeks only if the facts as to the value of plaintiffs' home and contents and the cause of their total loss are resolved in State Farm's favor.  *See Weiss*, 2007 WL 891869, at *3.  Thus, on this record, the Court cannot find as a matter of law that plaintiffs are limited to a specific recovery based on the defendant's asserted valuation of plaintiffs' property.

### 4.   Propriety of Recovery Under La. Rev. Stat. §§ 22:658 and 22:1220

State Farm also asks the Court to dispose of plaintiffs' claims under Sections 22:658 and 22:1220.  State Farm asserts that, assuming *arguendo* that it is found liable for breaching plaintiffs' homeowner's policy, plaintiffs have nonetheless failed to offer any evidence tending to show that its conduct in this matter was arbitrary, capricious, or without probable cause. Whether the Court views this a motion for judgment on the pleadings or a motion for summary judgment, State Farm's argument is without merit on this record.

Plaintiffs' state court petition specifically alleges that

"plaintiffs promptly reported the damage to the defendant which
knew almost immediately that plaintiffs' property had sustained
severe physical and structural damage from the winds and, later,
the storm surge." (R. Doc. 1-2, at ¶ 7).  The petition also
asserts that State Farm's adjuster concluded in November 2005
that he could not pay for any damages to their property located
below the approximate level of the flood waters, ignoring
indications that wind damaged the interior of their home,
including contents, before the flood waters arrived. (*Id.* at ¶¶
8, 9).  Moreover, plaintiffs contend that they submitted a
satisfactory proof of loss to State Farm "long before" they filed
their state court petition. (R. Doc. 1-2, at ¶ 15).  Clearly,
plaintiffs have pleaded a set of facts that could entitle them to
relief under either Section 22:658 or 22:1220.

Plaintiffs have also submitted evidence, unrebutted at this
point, supporting what they allege in their petition.  As noted
earlier, their expert engineering report prepared by James
Gilbert states that plaintiffs sustained wind damages in the
amount of $232,062.14, representing approximately 53.6 percent of
the replacement cost/actual cash value of the dwelling. (R. Doc.
21, Ex. 1, Gilbert Report; Ex. 7, Residential Substantial Damage
Estimate).  The report notes that "there was wind damage visible
throughout the area near the house," that "there was visible

14

damage to the roof, soffit and facia of the house," and that "a portion of the rear masonry wall was collapsed." (*Id.*).  It concludes that "it is more likely than not that the winds severely damaged the roof, facia and soffit allowing large amount of water to enter the building prior to storm surge." (*Id.*).  Furthermore, Paul Broussard states that a State Farm adjuster informed him that State Farm would not compensate plaintiffs through their homeowner's policy for any damage resulting from wind or wind-driven rain that may have occurred "below the water line" because plaintiffs' property had been flooded as well.  (R. Doc. 21, Ex. 9, Interrogatory Answers).  He avers that the adjuster told him that this determination "had come out of 'Dallas' - by which [the adjuster] meant State Farm's offices." (R. Doc. 21, Affidavit of Paul Broussard).  This, Broussard states, despite the adjuster's conclusion that "the roof was 'totaled.'" (*Id.*).

Thus, plaintiffs contend that, in light of this unrebutted evidence, State Farm's refusal to tender an additional amount to plaintiffs under their homeowner's policy was arbitrary or capricious.  The Court finds this evidence, though limited, sufficient to defeat defendant's summary judgment motion. Plaintiffs have created a genuine issue of fact as to whether State Farm knew it owed plaintiffs more money for wind damage but

nevertheless refused to compensate them within thirty or sixty days after receipt of satisfactory proof of loss.

### 5. Applicability of 2006 Amendments to La. Rev. Stat. §§ 22:658 and 22:1220 to Plaintiffs' Claims

In plaintiffs' state court petition, filed on August 28, 2006, and served on State Farm on September 14, 2006, plaintiffs assert that they are entitled to penalties under La. Rev. Stat. §§ 22:658 and 22:1220.  State Farm contends that plaintiffs are limited to recovery under Section 22:658 of a potential penalty of 25 percent and no attorney's fees.  State Farm relies on the version of La. Rev. Stat. § 22:658 in place in the immediate aftermath of Hurricane Katrina, which is when it asserts that it was alleged to have arbitrarily and capriciously failed to make a payment or written offer to settle plaintiffs' property damage claim within thirty days after receipt of satisfactory proofs of loss.  2003 La. Acts No. 790 (increasing penalties under La. Rev. Stat. § 22:658 from 10 percent to 25 percent).

State Farm's position finds support in plaintiffs' state court petition, in which plaintiffs assert that they "provided the defendant with satisfactory proof of loss *long before* the filing of this petition.  In addition, State Farm has already inspected the property, an act which by itself qualifies as satisfactory proof of loss." (R. Doc. 1-2, at ¶ 15) (emphasis

16

added).  It was not until August 15, 2006 that the Louisiana
legislature's most recent amendment to La. Rev. Stat. § 22:658
went into effect, increasing maximum penalties for violations of
the statute from 25 percent to 50 percent and authorizing
recovery of "reasonable attorney fees and costs."  *See* 2006 La.
Acts No. 813; *see also* La. Const. art. 3, § 19 (stating that all
laws enacted during a regular session of the legislature shall
take effect on August 15 of the calendar year in which the
regular session is held).  The Louisiana Supreme Court has stated
that generally "the determinative point in time separating
prospective from retroactive application of an enactment is the
date the cause of action accrues."  *Cole v. Celotex*, 599 So. 2d
1058, 1063 (La. 1992); *see also Brown v. RJ Reynolds Tobacco Co.*,
52 F.3d 524, 527 (5th Cir. 1995) ("A cause of action accrues when
a plaintiff may bring a lawsuit.").  Thus, under Section 22:658,
plaintiffs' cause of action accrued when State Farm allegedly
failed to make payment on their property damage claim thirty days
after receiving a satisfactory proof of loss.  *Cf. Manuel v. La.
Sheriff's Risk Mgmt. Fund*, 664 So. 2d 81, 87 (La. 1995) ("The
cause of action that gave rise to this litigation was the failure
to pay within 30 days.").  It appears then, based on plaintiffs'
own representation that they submitted to their insurer a
satisfactory proof of loss "long before" August 28, 2006, that

17

the 50 percent penalty provision was not enacted until after

State Farm allegedly violated the statute, and hence plaintiffs

could have brought their lawsuit.

Moreover, as plaintiffs concede, there is no support for the

proposition that the 2006 amendment to Section 22:658 was

intended to apply retroactively to causes of action that accrued

before it went into effect.  Under La. Rev. Stat. § 1:2, "No

Section of the Revised Statutes is retroactive unless it is

expressly so stated."  The legislature did not include such an

expression in 2006 La. Acts No. 813, and federal and state courts

have consistently declined to read in a legislative intent to

retroactively apply amendments to Section 22:658 in its absence.

*See, e.g.,* Ferguson, 2007 WL 1378507, at *3 (holding that 2006

amendments to Section 22:658 are not to be applied

retroactively); *Tomlinson v. Allstate Ins. Co.*, Civ. Docket No.

06-617 (E.D. La. Feb. 12, 2007) (Feldman, J.) (same); *Lewis v.

State Farm Ins. Co.*, 946 So. 2d 708, 728-29 (La. Ct. App. 2006)

(applying version of Section 22:658 in place at time that

plaintiffs' causes of action arose regardless of later

amendment); *Geraci v. Byrne*, 934 So. 2d 263, 267 (La. Ct. App.

2006) (same).

The Court therefore concludes that plaintiffs' recovery of

penalties under Section 22:658, if any, is limited to 25 percent

18

of the amount found to be due to them under their homeowner's policy, and they are not entitled to attorney's fees under the statute.

**IV.  CONCLUSION**

For the foregoing reasons, the Court GRANTS in part and DENIES in part State Farm's motion for judgment on the pleadings and/or motion for summary judgment.

New Orleans, Louisiana, this __2nd__ day of August, 2007.

_____
                SARAH S. VANCE
        UNITED STATES DISTRICT COURT